UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE
Eastern District of Kentucky
FILED
JUN 21 2018
AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

BETTY CASEY, Administrator of the
Estate of JOHN ALEXANDER CASEY,
Deceased,

    Plaintiff,

v.

RICHARD W. SANDERS,
WILLIAM ALEXANDER PAYNE,
DARREN STAPLETON,
JONATHAN ROUSE, and
CURT ROWE,

    Defendants.

NO. 7:17-CV-145-KKC

**OPINION AND ORDER**

\*\*\* \*\*\* \*\*\*

This matter is before the Court on two motions to dismiss for failure to state a claim. The first filed by Jonathan Rouse and Harold Curt Rowe, (DE 5), and the second by Richard W. Sanders, William Alexander Payne, and Darren Stapleton, (DE 6). For the reasons set forth below, all claims against Defendants Rowe, Sanders, Payne, and Stapleton are dismissed. Plaintiff's claims against Defendant Rouse for violation of John Casey's Fourteenth Amendment rights, the Americans with Disabilities Act, negligence, and gross negligence are dismissed. Plaintiff's claims against Defendant Rouse may proceed as to her claims that he violated John Casey's Fourth Amendment rights, committed battery, and for wrongful death pursuant to Ky. Rev. Stat. § 411.130 based on a battery theory.

## I. Background

The following facts are drawn from the Plaintiff's Complaint and accepted as true for the purpose of the Defendants' motions to dismiss. In the morning of July 21, 2016, Kentucky

State Troopers Jonathan Rouse and Harold Curt Rowe arrived at the residence of John Alexander Casey to arrest him on a bench warrant for failure to appear in court. (Compl. ¶ 9, DE 1.) The encounter initially proceeded calmly, but after the Troopers advised John Casey that they were there to arrest him he fled up a nearby hill. (Compl. ¶¶ 10–11.) Trooper Rouse pursued John Casey, who may have picked up a rock or empty blue Pepsi can to throw at Trooper Rouse. (Compl. ¶ 12.) Before John Casey could throw the object, he was shot a single time by Trooper Rouse. (Compl. ¶¶ 12–13.) An ambulance arrived forty minutes later and John Casey died due to the gunshot wound inflicted by Trooper Rouse. (Compl. ¶¶ 13, 16.)

Betty Casey, John Casey's mother and administratix of his estate, initiated this action alleging that Trooper Rouse's decision to shoot John Casey was objectively unreasonable, exhibited deliberate indifference for his life, was negligent, and constituted battery. More specifically, Betty Casey seeks damages under the Civil Rights Act of 1871, 42 U.S.C. § 1983, for violations of John Casey's rights under the Fourth and Fourteenth Amendment to the U.S. Constitution. She also alleges that the Defendant's treatment of John Casey violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.*, based on his diagnosis for post-traumatic stress disorder and major depressive disorder. Finally, she alleges state law claims for negligence, battery, and wrongful death pursuant to Ky. Rev. Stat. § 411.130.

Betty Casey asserts claims against two sets of Defendants. First, the "Trooper Defendants," Troopers Rouse and Rowe, are alleged to have personally engaged in the conduct leading to John Casey's death. (Compl. ¶ 7.) The "Supervisory Defendants" consist of Richard W. Sanders and William Alexander Payne, Commissioner and Deputy Commissioner of the Kentucky State Police ("KSP"), respectively, and Darren Stapleton, Commander of KSP Post 9. Betty Casey alleges that the Supervisory Defendants were

responsible for establishing policies and the employment, training, and supervision of each of the Defendants subordinate to them. (Compl. ¶¶ 4–6.)

## II. Standard of Review

A civil complaint is subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted." To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When evaluating a motion to dismiss under Rule 12(b)(6), "[t]he complaint is viewed in the light most favorable to [the plaintiff]; the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [the plaintiff's] favor." *Gavitt v. Born* 835 F.3d 623, 640 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)). Legal conclusions that are couched as factual allegations, however, need not be accepted. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Supreme Court has further elaborated on the requirements of Rule 8(a)(2) in two cases: *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The pleading standard of Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). A pleading that merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). Thus, to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Plausible does not mean probable; a claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but falls short if the "complaint pleads facts

3

that are "merely consistent with" a defendant's liability." *Id.* (citing *Twombly*, 550 U.S. at 556–57).

Ordinarily, when considering a Rule 12(b)(6) motion, the court must assess the facial sufficiency of the complaint "without resort to matters outside the pleadings. *Gavitt*, 835 F.3d at 640 (citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010)). If matters outside the pleadings are presented to and considered by the Court, the motion must be converted to one for summary judgment under Rule 56 and the parties given reasonable time to present all pertinent material. Fed. R. Civ. P. 12(d). Not all outside matters require the motion to be converted. The court "may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment. *Gavitt*, 835 F.3d at 640 (citing *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 774 (6th Cir. 2015); *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Matters of which a court may take judicial notice may also be considered without converting the motion. *Ohio Pub. Emps. Ret. Sys. v. Fed. Home Loan Mortg. Co.*, 830 F.3d 376, 382 (6th Cir. 2016).

**III. Analysis**

Before turning to Plaintiff's specific claims, the Court will address two initial matters. First, the Plaintiff has conceded that the Defendants are not liable under the Americans with Disabilities Act ("ADA") because Title II of the ADA is applicable only to government entities, not individual government employees. *See, e.g., Ms. K v. City of South Portland*, 407 F. Supp. 2d 290, 296 n.3 (D. Me. 2006) (collecting cases). Therefore, Plaintiff's ADA claims are dismissed as to all Defendants.

4

Second, Plaintiff has argued that the Supervisory Defendants have converted their motion to dismiss to one for summary judgment because it relies on matters outside the pleadings. *See* Fed. R. Civ. P. 12(d). Specifically, the Supervisory Defendants discuss testimony by Trooper Rouse before a state grand jury concerning the incident. The Supervisory Defendants argue that the Court need not convert the motion because federal courts may take judicial notice of other proceedings. *See Granader v. Public Bank*, 417 F.2d 75, 8283 (6th Cir. 1969). The Court will not consider any of the testimony discussed in the Supervisory Defendants' motion to dismiss and therefore need not convert this motion to one for summary judgment. Accordingly, Plaintiff's Rule 56(d) affidavit (DE 7-1) is untimely and will not be considered in addressing the sufficiency of Plaintiff's Complaint.

*A. Federal Claims*

Both the Trooper and Supervisory Defendants argue that they are entitled to qualified immunity as to Plaintiff's claim that the Defendants violated John. Casey's constitutional rights. In Count I, Plaintiff alleges generally that the "Defendants' conduct was objectively unreasonable, intentional, reckless, deliberate, wanton and/or malicious, and was indicative of their total deliberate and reckless disregard of and indifference to Mr. Casey's life as well as his rights and the risk of harm to him occasioned by such conduct." (Compl. ¶ 18.) Looking elsewhere in the Complaint, and considering Plaintiff's response brief, the claims against the Defendants can be summarized as follows. First, that Trooper Rouse violated John Casey's Fourth Amendment Right to be free from excessive force. (Compl. ¶ 14.) Second, that Trooper Rouse and Rowe were deliberately indifferent, in violation of the Fourteenth Amendment, to John Casey's medical needs. (Compl. ¶ 16.) Third, that Trooper Rowe failed to prevent the use of excessive force and contributed to his death by providing him an alcoholic drink prior to the shooting. (Pl.'s Resp. at 7, DE 7.) And fourth, that Defendants Sanders, Payne, and

5

Stapleton inadequately trained and supervised their subordinates, leading to John Casey's death. (Compl. ¶ 15.)

The doctrine of qualified immunity protects government officials, including law enforcement officers, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 231, 229 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Qualified immunity is "an immunity from suit rather than a mere defense to liability" and therefore its applicability must therefore must be resolved "at the earliest possible stage of litigation." *Id.* at 231–32 (first quoting *Mitchell v. Forysth*, 472 U.S. 511, 526 (1985); then quoting *Hunter v. Bryan*, 502 U.S. 224, 227 (1991) (*per curiam*)); *see Iqbal* 556 U.S. at 685 ("The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'") (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment)). That point, however, is typically summary judgment. *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015)).

To determine if a defendant is entitled to qualified immunity, the Court must ask "(1) whether the facts alleged by the plaintiff make out the violation of a constitutional right and (2) whether the right at issue was 'clearly established' at the time of the alleged violation."

6

*Id.* at 640 (citing *Pearson*, 555 U.S. at 232). The burden is on the plaintiff to show that both prongs are met and that the defendants are not entitled to qualified immunity. *Id.* at 640–41. The plaintiff can carry this burden, and overcome a motion to dismiss, by "alleging facts making out a plausible claim that defendants' conducted violated a constitutional right that was clearly established a the time of the violation." *Id.* (citing *Johnson v. Mosely*, 790 F.3d 649, 653 (6th Cir. 2015)).

*1. The Trooper Defendants*

*a. Trooper Rouse: Fourth Amendment Excessive Force Claim*

It is clearly established that individuals have a "right not to be shot absent "probable cause to believe that [they] pose[ ] a threat of serious physical harm, either to the officer or to others." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (alteration in original) (quoting *Sample v. Bailey*, 409 F.3d 689, 698 (6th Cir. 2005)). Therefore, the question for the Court is "whether, in light of the facts and circumstances of this case" Rouse's "use of deadly force violated" John Casey's "Fourth Amendment right to be free from excessive force." *Id.* The answer to that question hinges on whether the use of force was reasonable. *Id.* (citing *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014)). The Court must consider the totality of the circumstances, with special attention given to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (U.S. 1989) (citing *Tennessee v. Garner*, 471 U.S. 1, at 8–9 (1985)). The reasonableness of the officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). And, importantly, the analysis must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that

7

are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 397.

Considering these factors, the Court finds that qualified immunity as to whether Trooper Rouse used excessive force is better assessed at the summary judgment stage. Much of the analysis hinges on whether John Casey had in fact picked up an object, whether that object was a rock or empty Pepsi can, and whether he attempted to throw it at Trooper Rouse. For instance, as to the first factor, the crime which John Casey was to be arrested for—non-appearance—was a minor, non-violent offense. But the Court must also look at John Casey's "behavior immediately prior to the moment he was shot. *Mullins*, 805 F.3d at 766. If John Casey had in fact picked up a rock to throw at Trooper Rouse, he may have been about to commit a violent felony under Kentucky law. *See* Ky. Rev. Stat. § 508.025(1)(a) (defining assault in the third degree as when an actor "[r]ecklessly, with a deadly weapon or dangerous instrument, or intentionally causes or attempts to cause physical injury to: A state . . . peace officer[.]"). Similarly, and at the crux of this case, whether John Casey posed an immediate threat to Rouse's safety without further discovery. The only factor which seems clearly established in favor of qualified immunity is that John Casey was attempting to evade arrest by fleeing. Therefore, Trooper Rouse is not entitled to qualified immunity on Plaintiff's claim for excessive force at this stage.

### b. *Troopers Rouse and Rowe: Fourteenth Amendment Right to Adequate Medical Care Claim*

Plaintiff also alleges that Troopers Rouse and Rowe "made little to no effort to prevent him from succumbing to his wound beyond calling an ambulance, which did not arrive until approximately 45 minutes after Mr. Casey had been shot." (Compl. ¶ 16). She asserts that the Troopers were deliberately indifferent, in violation of the Fourteenth Amendment, to John Casey's right to adequate medical care. The Due Process Clause of the Fourteenth

Amendment requires government officers "to provide medical care to persons . . . who have been injured while being apprehended by police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see Owensby v. City of Cincinnati*, 414 F.3d 596, 604 (2015) (holding that a suspect who "may have fled or resisted before being taken into custody" had a right to adequate medical care). Particularly, that right encompasses "the right to have medical assistance summoned immediately upon the police officers becoming aware that he was in need of immediate medical care." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1097 (6th Cir. 1992). It also requires officers "to ensur[e] that medical responders are able to access the victim without unreasonable delay." *Scozzari v. Miedzianowski*, 454 F. App'x 455, 466 (6th Cir. 2012).

The facts alleged in the Complaint do not make out a constitutional violation. Plaintiff alleges that the ambulance took forty-five minutes to arrive, not that the Troopers were dilatory in summoning the ambulance. There is also no allegation that the Troopers failed to ensure that the medical responders had prompt access to John Casey upon their arrival. Thus, Plaintiff has not plausibly claimed a constitutional violation for lack of adequate medical care.

To the extent that Plaintiff argues that the Officers were required to give more than "little to no effort" in providing medical care, he has not identified any case which establishes that particularized right. Neither of the two cases relied on by Plaintiff clearly establish that right. In *Owensby*, the officers viewed the decedent "in significant physical distress, yet made no attempt to summon or provide any medical care until several minutes later." *Owensby*, 414 F.3d at 603. As discussed above, Plaintiff has not alleged that the Troopers failed to timely summon medical care for John Casey. Therefore, the particularized right established in *Owensby* was not violated. Similarly, in *Scozzari*, the officers "had not secured the scene of the [shooting] incident" which resulted in the "paramedic [being] forced to stage off-site two

9

minutes before approaching." *Scozzari*, 454 F. App'x at 465. Instead of securing the scene, the officers in *Scozzari* "spent at least part of [the time before the ambulance arrived] knocking on doors and asking neighbors to witness Scozzari's weapons, activities that were unrelated to securing the scene or saving Scozzari's life." *Id.* There is no allegation in the Complaint that the scene of John Casey's shooting was unsecured when an ambulance arrived, or that the officers engaged in unrelated activities while awaiting medical help. Therefore, Plaintiff's inadequate medical care claim fails on both prongs needed to show that the Trooper Defendants are not entitled to qualified immunity.

    *c. Trooper Rowe: Failure to Intervene and Contributing to John Casey's Death*

Plaintiff makes two argument's in support of her claim that Trooper Rowe is liable for John Casey's death. First, she argues that Trooper Rowe is liable for failing to prevent Trooper Rouse's use of excessive force. In addition to actively participating in the use of excessive force, an officer may also be liable if he "supervised the officer who used excessive force" or "owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997) (citing *Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996)). The Complaint is devoid of any allegation that Trooper Rowe supervised Trooper Rouse, despite making supervisory allegations with respect to Defendants Sanders, Payne, and Stapleton. Therefore the only question is whether Trooper Rowe can be held liable for failing to protect John Casey from Trooper Rouse's use of excessive force. "Generally speaking, a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reasons to know that excessive force would be or was being used, and (2) the officer had both the opportunity and means to prevent the harm from occurring." *Id.* (citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). Neither prong of this test is met. Plaintiff does not allege that Trooper Rowe observed or knew that Trooper Rouse would be or was using excessive force. The Complaint states that only Trooper

10

Rouse pursued John Casey, making no mention of where Trooper Rowe was, or what he was doing, during the shooting. (Compl. ¶ 12.) Even assuming that Trooper Rowe had also pursued John Casey and was present during the shooting, there is also no basis for believing that Trooper Rowe might have had the opportunity to prevent the shooting. John Casey died of a single gunshot, fired after he may have picked up a rock to throw at Trooper Rouse. Trooper Rowe would have had no opportunity to stop the split-second decision made by Trooper Rouse.

With regards to Plaintiff's argument that Officer Rowe contributed to John Casey's death by providing him a bottle of "Bootlegger," an alcoholic drink, during the initial encounter, Officer Rowe is also entitled to qualified immunity. Plaintiff has not cited to, nor has the Court been able to find, any case which established, let alone clearly, that providing a suspect with an alcoholic drink can be the basis for holding an officer liable for contributing to a second officer's late use of excessive force.

*2. The Supervisory Defendants*

Plaintiff alleges that the shooting death of John Casey was a consequence of the inadequate training and supervision of Commissioner Sanders, Deputy Commissioner Payne, and Commander Stapleton. (Compl. ¶ 15.) Supervisors may be liable for the unconstitutional conduct of their subordinates in certain limited circumstances. The Supreme Court has clearly held that "government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 676. Thus, "a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). Instead, "supervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Id.* (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Thus, the standard the Court must apply to determine if a

11

supervisor's failure to supervise or train is actionable is whether the supervised "encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* at 242 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). This means that, "'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id.* (quoting *Shehee*, 199 F.3d at 300). Additionally, there must also be a "causal connection between the defendant's wrongful conduct and the violation alleged." *Id.*

The facts in the Complaint fail to plausibly allege that the Supervisory Defendants knowingly acquiesced in the unconstitutional conduct of their subordinate. Two Sixth Circuit cases are instructive as to the pleading requirements to establishment acquiescence in a subordinates unconstitutional conduct. In *Coley v. City of Lucas Cty*, 799 F.3d 530 (2015), the family of a prisoner who died after a police officer put him in a chokehold sought to hold the sheriff, James Telb, personally liable for the his subordinates conduct. The court of appeals found that the plaintiff had sufficiently alleged that Telb knowingly acquiesced in the officers conduct where the Complaint stated that Teld had a duty to train and supervise sheriff department employees to avoid use of excessive force; that Telb failed to train and supervise staff regarding the proper use of force, including on the specific use of chokeholds; that Telb failed to properly investigate use of excessive force; and that Telb help to cover up the subordinates unconstitutional actions by deliberately making false statements to federal officials. *Id.* at 542. In *Peatross*, which involved a police shooting, the family of the decedent sought to hold the Director of the Memphis Police Department, Toney Armstrong, liable as a supervisor. 818 F.3d at 236–37. The Complaint alleged, similar to *Coley*, that Armstrong "failed to train and supervise the officers to avoid the use of excessive force, failed to investigate the allegations of excessive force properly, and attempted to cover-up the unconstitutional conduct of his subordinates by exerting the officers in an effort to escape

12

liability." *Id.*at 243. The allegations in *Peatross*, however, went one-step further than *Coley*, alleging that there had been fifty-four police shootings in the previous five years and that, despite Director Armstrong's acknowledgment of "a dire need to review and improve the police department's operations" and "its disciplinary process" no improvements were made. *Id.*

Compared to *Coley* and *Peatross*, the Complaint in this matter fails to allege that Commissioner Sanders, Deputy Commissioner Payne, and Commander Stapleton did anything "more than play a passive role in the alleged violation or show mere tacit approval of the goings on." *Id.* (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)). It is devoid of any factual allegations related to the Supervisory Defendants, such as a cover-up following the shooting or a failure to punish previous acts of wrongful conduct, from which the Court could plausibly conclude that the they had implicitly authorized or approved of Trooper Rouse's conduct.

Moreover, even if the Court found the Supervisory Defendants had acquiesced in the shooting, the Complaint fails to sufficiently plead a causational connection between John Casey's death and the acts and omissions of the Supervisory Defendants. In *Peatross*, the court found a causal connection where the Director of Police "was involved at least in part in creating and enforcing all department policies; that he did not punish officer misconduct, including the use of excessive force; that he failed to take action in the face of growing use of excessive force by officers and admonishment from the Mayor on the issue and that he 'rubber stamped' officer misconduct." *Id.* at 244. Also instructive is *Campbell v. City of Springboro*, 700 F.3d 779 (6th Cir. 2012). In that case, the court found a chief of police was not entitled to qualified immunity for supervisory liability were he allowed the canine unit, which attacked and injured the plaintiff, "in the field even after his training had lapsed. He never required appropriate supervision of the canine unit and essentially allowed it to run itself. He failed

13

to establish and publish an official K–9 unit policy, and he was seemingly oblivious to the increasing frequency of dog-bite incidents involving" the canine at issue. *Id.* at 790. While the Complaint alleges that the Supervisory Defendants were responsible for training officers and promulgating policies and procedures, it does not allege how the policies and procedures were deficient, how the Supervisory Defendants had failed to enforce them, or that failure to investigate prior misconduct had contributed to the shooting of John Casey.

### B. State Law Claims

Plaintiff asserts three state law claims against the Defendants. In Count III of her Complaint she alleges that the Defendants were negligent and grossly negligent. In Count V, she alleges liability pursuant to Ky. Rev. Stat. § 411.130 for causing the wrongful death of John Casey. Count IV of the Complaint alleges that Trooper Rouse committed battery.

#### 1. Trooper Defendants

##### a. Negligence

To state a claim for negligence under Kentucky law, a plaintiff must allege "(1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Patton v. Bickford*, 529 S.W.3d 717, 729 (citing *Pathways, Inc., v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003)). This Court has previously recognized that "when an officer uses excessive force, he can be liable for the intentional tort of battery, but he cannot be liable for negligence." *Durmov v. Univ. of Ky.*, No. 5:12-258, 2013 WL 488976, at *2 (E.D. Ky. Feb. 7, 2013) (citing *Ali v. City of Louisville*, No. 3:05CV-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006)).

Plaintiff primarily relies on the Sixth Circuit's decision in *Coitrone v. Murray*, 642 F. App'x 517 (6th Cir. 2016), to argue that a negligence claim can be made against the Trooper Defendants. That case is distinguishable. In *Coitrone*, the plaintiff had been injured when an officer struck the plaintiff's motorcycle with his police vehicle during a chase. *Id.* at 519. The

court of appeals found the negligence claim should not have been dismissed because "the officer assert[ed] that the contact with the suspect was unintentional and the plaintiff allege[d] violations of traffic laws and the failure to adhere to reasonable police procedures, all circumstances that are more consistent with a negligence claim than a battery claim." *Id.* at 524. In contrast with *Coitrone*, Plaintiff has not alleged that the shooting in this case was unintentional. Moreover, *Coitrone* is the exception, not the rule; an officer involved shooting is a classic example of a battery claim.

Plaintiff also invokes Ky. Rev. Stat. Ann. § 503.090(2), which governs the use of physical force by law enforcement officers making an arrest, and claims that violation of the statute constitutes negligence *per se*. That argument fails. A claim for negligence against a police officer is actionable under Kentucky law only where there is a special relationship between the officer and the injured party. Two conditions are required to establish such a relationship: "1) the victim must have been in state custody or otherwise restrained by the state at the time the injury producing act occurred, and 2) the violence or other offensive conduct must have been committed by a state actor." *City of Florence v. Chipman*, 38 S.W.3d 387, 392 (Ky. 2001), *as amended* (Feb. 26, 2001). Plaintiff has not alleged that John Casey was in custody or otherwise restrained when he was shot. Therefore, Plaintiff has failed to state a claim for negligence.

*b. Battery*

Kentucky law permits an officer to "use such force as may be necessary to make [an] arrest but no more." *City of Lexington v. Gray*, 499 S.W.2d 72, 74 (Ky. 1973) (citing Ky. Rev. Stat. § 503.090(3) ("No unnecessary force or violence shall be used in making an arrest.")). Accordingly, an "officer is liable for the intentional tort of battery" if "he deliberately exceeds the privileged amount of force by committing an unwarranted violence on the arrestee." *Ali*

15

*v. City of Louisville*, No. 3:05CV-427-R, 2006 WL 2663018, at *8 (W.D. Ky. Sept. 15, 2006) (citing *Gray*, 499 S.W.2d at 75).

Public officials sued in their individual capacities in Kentucky are entitled to "qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Public officers are entitled to qualified official immunity for negligent performance "of (1) discretionary acts or functions, *i.e.,* those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Id.* (internal citations omitted). On the other hand, a public officer "is afford no immunity from tort liability for the negligent performance of a ministerial act, *i.e.,* one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (citing *Franklin County v. Malone*, 957 S.W.2d 195, 201 (Ky. 1997)).

Trooper Rouse was engaged in a discretionary act within the scope of his authority he when used force against John Casey. *See Burnette v. Gee*, 137 F. App'x 806, 813 (6th Cir. 2005) ("[A]pproach in investigating [an] attempted suicide and the ultimate seizure of [plaintiff] was a discretionary rather than ministerial act."); *Gambrel v. Knox Cty.*, No. 17-184-DLB, 2018 WL 1457296, at *12 (E.D. Ky. Mar. 23, 2018) ("There can be no argument that [police officers' use of force] were anything other than discretionary."); *Nichols v. Bourbon Cty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014) ("The determination of the amount of force required to effect an arrest is a discretionary act and was within the scope of [defendant's] authority as a School Safety Officer."); *Woosley v. City of Paris*, 591 F. Supp. 2d 913, 922 (E.D. Ky. 2008) (police officer's use of force "were clearly discretionary acts within

16

the scope of his authority as a police officer"). Plaintiff's claim that Trooper Rouse's actions were ministerial because they are defined by Ky. Rev. Stat. Ann. § 503.090(2) has no merit. That statute specifically contemplates the discretionary nature of using force when making an arrest. *See* § 503.090(1)(a), (c), 2(c) (stating that use of force to make an arrest is justifiable only when the officer "*[b]elieves* that such force is necessary," "*[b]elieves* the arrest to be lawful," and "*believes* that the person . . . is likely to endanger human life") (emphasis added).

Having determined that "the act was performed within the scope of [Trooper Rouse's] discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*, 65 S.W.3d at 523 (citing *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991), *as modified by, Cox v. Ky Dep't of Transp.*, 53 F.3d 146 (6th Cir. 1995)). The Court may find an officer acted in bad faith based on:

> a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive.

*Yanero*, 65 S.W.3d at 523. As discussed above, Plaintiff has sufficiently pled facts alleging that Trooper Rouse was unreasonable in his use of deadly force in violation of the Fourth Amendment. Accordingly, taking the facts pled in the Complaint as true and construing all inferences in favor of the Plaintiff, *Wesley*, 779 F.3d at 428, the Court finds that Trooper Rouse is not entitled to official qualified immunity at the motion to dismiss stage on Plaintiff's battery claim.

   c. *Wrongful death*

"Whenever the death of a person results from an injury inflicted by the negligence or wrongful act of another, damages may be recovered for the death from the person who caused

17

it . . . ." Ky. Rev. Stat. Ann. § 411.130(1). The analysis under this statute tracks the Court's earlier discussion of Plaintiff's negligence and battery claims. *See Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016) (wrongful death claim based on underlying tort of negligence); *Woodcock v. City of Bowling Green*, 679 F. App'x 419, 426 (6th Cir. 2017) (wrongful death claim based on the underlying tort of battery). Therefore, Plaintiff's wrongful death claim may proceed on a battery theory, but not a negligence theory.

### 2. *Supervisory Defendants*

The Supervisory Defendants seek dismissal of the state law claims for negligence and wrongful death based on qualified official immunity. Plaintiff primarily argues that the Supervisory Defendants were engaged in a ministerial function and that therefore they are not entitled to immunity.[1]

When supervision involves "only the enforcement of a known rule" it is a ministerial function. *Yanero*, 65 S.W.3d at 529. In contrast, when there is "no regulation, statute, or administrative framework" specifying how a subordinate is to be supervised, the function is discretionary. *Doe v. Magoffin Cty. Fiscal Ct.*, 174 F. App'x 962, 973 (6th Cir. 2006) (holding negligent supervision of a county janitor by a county judge executive was a discretionary act); *see also Rowan Cty. v. Sloas*, 201 S.W.3d 469 (Ky. 2006) (holding the supervision and training of staff and state prisoners were discretionary acts). The Sixth Circuit has stated that it is "well-settled" that "deciding on the content of policies and training is a discretionary function" while "the training of employees to adhere to their duties once that content is decided is a ministerial function." *Hedgepath v. Pelphrey*, 520 F. App'x 385, 391 (6th Cir. 2013).

---

[1] To the extent that Plaintiff argues that the Supervisory Defendants are vicariously liable for Trooper Rouse's action, that claim is barred by Kentucky law. *See Yanero*, 65 S.W.3d at 478 ("Public officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those employed by them if they have employed persons of suitable skill.").

18

The Supervisory Defendants acts, as alleged in the Complaint, were discretionary. Plaintiff claims that the Supervisory Defendants were "responsible for the establishment of policies" and "the employment, training, [and] supervision" of the Trooper Defendants. (Compl. ¶¶ 4–6.) Plaintiff has not identified any previously defined policy or rule that the Supervisory Defendants failed to enforce; instead, she alleges that the Supervisory Defendants failed to promulgate appropriate policies. Plaintiff primarily relies on the Sixth Circuit's decision in *Finn v. Warren Cty.*, 768 F.3d 441 (2014), in support of her argument that the Supervisory Defendants were engaged in ministerial functions. In that case, however, "the plaintiffs pointed to the jail's training policy, which specifically provided" that the defendant jailer was to establish certain training programs. *Id.* at 449. This case is more similar to *Walker v. Davis*, 643 F. Supp.2d 921, which the court in *Finn* distinguished. In *Walker*, the district court found a county sheriff was entitled to immunity where the plaintiff did not "point to any policy that required [defendant] to supervise the enforcement of the pursuit policy in any particular manner." Because the Plaintiff has not pointed to any regulation or statute requiring the Supervisory Defendants to enact certain policies, or enforce them in a specific manner, their acts were discretionary.

There is no dispute that the Supervisory Defendants acts were performed within the scope of their employment. Thus, they are entitled to official qualified immunity if they did not act in bad faith. Plaintiff's response, in discussing the state law claims, does not present any argument that the Supervisory Defendants acted in bad faith. Accordingly, and for the reasons set forth in discussing the Supervisory Defendant's entitlement to qualified immunity for federal claims, the Plaintiff has not carried her burden to show the Supervisory Defendants acted in bad faith. They are therefore entitled to official qualified immunity as to Plaintiff's state law claims.

19

## IV. Conclusion

For the reasons set forth above, the Court **HEREBY ORDERS**:

(1) Defendants Jonathan Rouse and Harold Curt Rowe's motion to dismiss (DE 5) is **GRANTED IN PART** and **DENIED IN PART**

(2) Defendants Richard W. Sanders, William Alexander Payne, and Darren Stapleton's motion to dismiss (DE 6) is **GRANTED**;

(3) all claims against Defendants Harold Curt Rowe, Richard W. Sanders, William Alexander Payne, and Darren Stapleton are **DISMISSED**;

(4) Plaintiff's claims against Defendant Jonathan Rouse for violation of John Casey's Fourteenth Amendment rights, violation of the Americans with Disabilities Act, negligence, and gross negligence are **DISMISSED**.

Dated June 21, 2018.



Signed By:
Karen K. Caldwell
United States District Judge