UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE

BETTY CASEY, *Administratrix of the Estate of John Alexander Casey, Deceased*,

    **Plaintiff,**

v.

JONATHAN ROUSE,

    **Defendant.**

CIVIL ACTION NO. 7:17-cv-145-KKC

<u>ORDER AND OPINION</u>

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff's Motion for Leave to File an Amended Complaint under Federal Rule of Civil Procedure 15. (DE 24.) For the reasons stated below, that Motion (DE 24) is **GRANTED**.

## I. BACKGROUND

This case arises out of the death of John Alexander Casey, who was shot and killed by Defendant Jonathan Rouse of the Kentucky State Police ("KSP"). (DE 1 at 1.) Casey's mother, as Administratrix of his Estate, brought this suit alleging battery, wrongful death pursuant to Ky. Rev. Stat. § 411.130, and violations of the Fourth Amendment, the Civil Rights Act of 1871, and 42 U.S.C. § 1983. (DE 1 at 6.) Plaintiff now seeks to amend her Complaint to delete parties and causes of action previously dismissed by the Court and to correct the allegations from the initial complaint to conform with facts adduced in discovery. (DE 24 at 1.)

1

The initial Complaint alleged as follows: KSP Troopers Rouse and Rowe arrived at Casey's residence to arrest him on a bench warrant for failure to appear in court. (DE 1 at 4.) Upon their arrival, they encountered Casey, who did not appear to be armed or threatening. (DE 1 at 4.) After Casey was advised by the Troopers that they were there to arrest him, Casey fled up a hill adjacent to his residence. (DE 1 at 4.) Then, "Casey may have picked up a rock or an empty blue Pepsi can to throw at Defendant Rouse." (DE 1 at 5.) Thereafter, Casey was shot by Rouse before he threw anything. (DE 1 at 5.) Casey died from the single gunshot wound, and at the time he was shot, he was not armed or threatening. (DE 1 at 5.)

The proposed Amended Complaint changes the facts slightly. It alleges as follows: Rouse and Rowe drove to the residence of Lacy Wolford in Pike County, Kentucky, to question Wolford about an alleged assault. (DE 24-1 at 2.) While at Wolford's residence, the Troopers encountered Casey, who lived next door and did not appear to be in possession of a weapon. (DE 24-1 at 2-3.) Troopers spoke with Casey and performed a warrant check, which revealed that a bench warrant had been issued for Casey's arrest for non-payment of a fine for a minor violation. (DE 24-1 at 3.) Thereafter, the Troopers advised Casey that he was under arrest. (DE 24-1 at 3.) Wolford—who was also on the scene—then fled, and both Troopers pursued him, leaving Casey unrestrained and unattended. (DE 24-1 at 3.) When Rouse returned, Casey was gone. (DE 24-1 at 3.) Rouse then walked toward Casey's residence and advised Casey's girlfriend and two minor females that he intended to call Social Services. (DE 24-1 at 3.) Thereafter, a verbal altercation ensued, and Rouse walked back toward his cruiser to call Social Services. (DE 24-1 at 3.) At that time, Casey reappeared on a hill above Rouse. (DE 24-1 at 3.) Rouse

2

and Casey had a verbal altercation, and Casey may have thrown a rock at Rouse, which missed. (DE 1 at 5; DE 24-1 at 3.) Rouse then drew his gun and fired at Casey, killing him. (DE 24-1 at 3.) At the time Casey was shot, he was not armed or threatening. (DE 24-1 at 3-4.)

## II. ANALYSIS

The Federal Rules of Civil Procedure ("FRCP") permit any party to "amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, this window of opportunity is not indefinite. *See Shane v. Bunzel Distribution USA, Inc.*, 275 Fed. Appx. 535, 536 (6th Cir. 2008). "Once a pleading deadline has passed, litigants must meet the higher threshold for modifying a scheduling order found in Rule 16(b)." *Id*. *See also Leary v. Daeschner*, 349 F.3d 888, 906-07 (6th Cir. 2003); *Birchwood Conservancy v. Webb*, 302 F.R.D. 422, 424 (E.D. Ky. 2014). FRCP 16(b)(4) states that "[a] schedule may be modified only for good cause and with the judge's consent." Good cause requires the late moving litigant to show that "despite their diligence they could not meet the original deadline." *Leary*, 349 F.3d at 907.

In determining whether to grant a motion to amend a complaint, the court should consider the *Foman* factors: (1) undue delay in filing the motion; (2) lack of notice to adverse parties; (3) whether the movant is acting in bad faith, or with a dilatory motive;

(4) failure to cure deficiencies by previous amendments; (5) the possibility of undue prejudice to adverse parties; and (6) whether the amendment is futile. *Foman v. Davis*, 371 U.S. 178, 192 (1962).

Here, the proposed Amended Complaint deletes parties and causes of action previously dismissed by the Court, and it corrects the allegations from the initial Complaint to conform with facts adduced in discovery. (DE 24 at 1.) Rouse asserts that amending the Complaint at this stage would be unduly prejudicial due to discovery deadlines. (DE 28 at 2.) However, Rouse does not explain why deleting the parties and causes of action that have been dismissed by the Court and clarifying the facts would prejudice him.

Amending the Complaint is unnecessary. There is no need to amend a complaint to delete parties and dismissed claims because the Court knows which parties and claims it has dismissed. *See Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x. 104, 114 (6th Cir. 2009). Additionally, facts adduced in discovery are before the Court regardless of whether they are included in the Complaint. *Id*. Nevertheless, after analyzing the relevant *Foman* factors listed above, the Court grants Plaintiff's Motion for Leave to File an Amended Complaint. As further explained below, although Plaintiff's Motion is untimely, Rouse is not unduly prejudiced.

**A. Plaintiff's Motion is untimely.**

Plaintiff's Motion is undeniably untimely. The Court's Scheduling Order set a deadline of November 1, 2018 to amend pleadings. (DE 15 at 1). Litigants who fail to observe a pleading deadline must meet the higher threshold for modifying a scheduling

order according to FRCP 16(b)(4), which provides that schedules may be modified with the judge's consent only for good cause. *See Shane v. Bunzel Distribution USA, Inc.*, 275 F. App'x. 535, 536 (6th Cir. 2008); *Leary*, 349 F.3d at 906-07. Good cause requires moving litigants to show that "despite their diligence they could not meet the original deadline." *Leary*, 349 F.3d at 907.

Plaintiff has not conclusively shown that she could not meet the original November 1, 2018 deadline, though she does offer some explanation for her delay in her reply. She states that the initial Complaint was filed in good faith reliance on incomplete information because of an approaching statute of limitations deadline and because the KSP investigation of the shooting of Casey was incomplete. (DE 29 at 2.) The KSP investigation of Casey's death was not closed and made available to Plaintiff until November 16, 2018, nearly two and a half years after the shooting and two weeks after the amendment deadline passed. (DE 29 at 2.) Plaintiff alleges that the delay in her Motion was a result of KPS's custom and practice of trying to "run out the clock" on claims arising from its troopers' misconduct. (DE 29 at 2.) If true, this suggests bad faith on the part of KSP and may weigh in favor of granting Plaintiff's Motion, but it does not fully excuse Plaintiff's failure to observe the Scheduling Order's deadlines.

Four months after the close of the KSP investigation, on February 22, 2019, Plaintiff deposed Troopers Rouse and Rowe. (DE 29 at 2.) Plaintiff does not otherwise explain why she needed to wait until February 22, 2019 to depose the Troopers, although the Court assumes that she wanted to review the results of the KSP investigation before deposing the Troopers. Additionally, the Court is not aware of any KSP policy on depositions of officers relating to ongoing investigations, and when plaintiffs in similar

5

cases have attempted to acquire such information in discovery, courts have gone different ways. *Compare Barfield v. City of Fort Lauderdale Police Dep't*, 639 So. 2d 1012, 1016 (Fla. Dist. Ct. App. 1994) (holding that information relating to an active departmental investigation of a police shooting was exempt from discovery), *with Toledo Police Patrolman's Ass'n Local 10 v. City of Toledo*, No. L-99-1143, 2000 WL 262359, at *9 (Ohio Ct. App. Mar. 10, 2000) (holding that, absent a criminal proceeding, internal investigative reports relating to a police shooting were not exempted from disclosure). Further, the issue raises the question of law enforcement investigatory privilege, which other circuits recognize but which the Sixth Circuit has not yet established. *Goodwin v. City of Cleveland*, No. 1:15CV0027, 2016 WL 1588650, at *1 (N.D. Ohio Apr. 20, 2016). *See Dellwood Farms, Inc. v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997) (establishing investigatory privilege and a balancing test to determine when it applies).

Plaintiff has not conclusively shown she was required to wait until the close of the KSP investigation to depose the Troopers. *See id.* Most importantly, it does not appear that Plaintiff tried to do so, nor did she raise these issues in her Motion. *Id.*; (*See* DE 29 at 2.) The Court is left to balance Plaintiff's allegation that the delay in her Motion was a result of KPS's custom and practice of trying to "run out the clock" on claims arising from its troopers' misconduct with the facts that her Motion was filed several months after the Court's Scheduling Order deadline and she did not explain why it was necessary to wait for KSP's investigation to be complete before deposing the Troopers. Plaintiff is required to show that despite her diligence she could not meet the original deadline. *See Leary*, 349 F.3d at 907. Whether the Plaintiff has shown good cause under FRCP 16(b)

6

is thus questionable. At best for Rouse, this factor weighs slightly against granting Plaintiff's Motion for Leave to File an Amended Complaint.

## B. Rouse would not be prejudiced.

Rouse claims that amending the Complaint to include new factual allegations would unduly prejudice him, as discovery was conducted under one set of factual allegations. (DE 28 at 2.) Plaintiff argues that Rouse is not prejudiced because the changes to the proposed Amended Complaint accurately state the facts which led up to Casey's death, as adduced from discovery, and delete parties and causes of action dismissed by the Court. (DE 29 at 1-2.)

To determine whether an amendment would prejudice a defendant, the Court must consider whether granting the amendment would require the defendant to conduct additional discovery or delay the resolution of the dispute. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994).

The proposed Amended Complaint is very similar to the initial Complaint. It does not contain any additional parties or allege new causes of action against Rouse. Instead, it merely more accurately states the facts which led up to Casey's death and deletes parties and causes of action previously dismissed by the Court. (*See* DE 1-1; DE 24-1.) Additionally, Rouse does not otherwise allege that they newly included facts are incorrect, prejudicial, or not supported by the discovery.

Paragraphs 1-4 of the proposed Amended Complaint contain the exact same information as the initial Complaint. The only difference in these paragraphs is that the proposed Amended Complaint deletes parties that have been dismissed by the Court.

(*See* DE 1 at 2-3; DE 24-1 at 1-2.) Paragraph 5 of the proposed Amended Complaint tracks the language of Paragraph 8 of the initial Complaint, except that it removes defendants and causes of action dismissed by the Court and adds that Rouse's conduct was "objectively unreasonable." (*See* DE 1 at 3-4; DE 24-1 at 2.) Paragraphs 6 and 8-12 of the proposed Amended Complaint differ slightly from the initial Complaint. The differences are as follows: (1) the initial Complaint states that Rouse and Rowe arrived at Casey's residence to arrest him on a bench warrant, and the proposed Amended Complaint states that Rouse and Rowe encountered Casey while they were responding to a prior alleged assault involving his neighbor, Lacy Wolford; (2) the initial Complaint contains no information regarding how police discovered Casey had an outstanding warrant, and the proposed Amended Complaint explains that police did a warrant check to discover the outstanding bench warrant; (3) the initial Complaint contains no information about Wolford fleeing the scene, and the proposed Amended Complaint states that Wolford fled the scene, running up a hill behind his residence, and that both Troopers pursued him—leaving Casey unrestrained, unconfined, and unattended; (4) the initial Complaint states that Casey fled the scene up a hill adjacent to his residence, and the proposed Amended Complaint states that when Rouse returned after pursuing Wolford, Casey was gone; (5) the initial Complaint contains no information regarding Rouse's encounter with Casey's girlfriend and two minor females at his residence, and the proposed Amended Complaint states that Rouse walked to the Casey residence, where he encountered Casey's girlfriend and two minor females; (6) the initial Complaint contains no information about a verbal altercation between Casey's girlfriend and Rouse, and the proposed Amended Complaint states that Rouse told Casey's girlfriend of his

8

intention to call Social Services and that a verbal altercation ensued; (7) the initial Complaint contains no information about a verbal altercation between Casey and Rouse, and the proposed Amended complaint states that as Rouse walked back to his cruiser to call Social Services, Casey reappeared on the hill above him, and they got into a verbal altercation; (8) the initial Complaint states that Casey may have picked up a rock or an empty blue Pepsi can to throw at Rouse, but that Casey was shot before he threw anything, and the proposed Amended Complaint states that Casey may have thrown a rock at Rouse, which missed. (*See* DE 1 at 4-5; DE 24-1 at 2-3.) The only other difference in these paragraphs is that the proposed Amended Complaint deletes facts relating to parties and causes of action that have been dismissed by this Court. Paragraphs 7 and 13-15 of the proposed Amended Complaint are contained in the initial Complaint. (*See* DE 1 at 4-5; DE 24-1 at 3-4.) Paragraph 16 of the proposed Amended Complaint tracks the language of Paragraph 19 of the initial complaint, except that it adds that Casey was subject to unreasonable and excessive force. (*See* DE 1 at 6; DE 24-1 at 4.) Finally, Paragraphs 17-19 are contained in the initial Complaint. (*See* DE 1 at 6-7; DE 24-1 at 4.) The only other difference between the initial Complaint and the proposed Amended Complaint is that the proposed Amended Complaint deletes parties and causes of action that have been dismissed by the Court under the section listing the causes of action. (*See* DE 1 at 6; DE 24-1 at 4.)

The foregoing differences between the initial Complaint and proposed Amended Complaint are very minor and merely clarify the facts, parties, and causes of action. Although amendment is unnecessary, it would not unduly prejudice Rouse. And Rouse does not even explain why amending the Complaint would be prejudicial. Amending the

9

Complaint would not require Rouse to seek any additional discovery, nor would it delay resolution, as the facts alleged in Plaintiff's proposed Amended Complaint are undisputed and based entirely on the record admissions of Rouse and Rowe in their depositions. (DE 29 at 1); *See Phelps*, 30 F.3d at 663. Accordingly, this factor weighs in favor of granting Plaintiff's Motion for Leave to File an Amended Complaint.

**C. Plaintiff's Motion for Leave to File an Amended Complaint is unnecessary but should be granted.**

Rouse's response to Plaintiff's Motion for Leave to File an Amended Complaint merely argues that the Motion is untimely and amending the Complaint would cause undue prejudice. (DE 28 at 1-2.) Even though the Motion is untimely, the Court determined above that it does not unduly prejudice Rouse. Additionally, Rouse does not assert that there was a lack of notice, bad faith, or a dilatory motive. This is also Plaintiff's first proposed Amended Complaint, so there was no failure to cure deficiencies in previous amendments. And the proposed Amended Complaint is not futile. The claims and party remaining in this case have already survived a motion to dismiss, and the proposed Amended Complaint does not add new parties or causes of action. *See Miller v. Calhon Cty.*, 408 F.3d 303, 318 (6th Cir. 2000). Accordingly, although amending the Complaint to delete parties and causes of action previously dismissed by the Court and to correct allegations to conform with facts adduced in discovery is entirely unnecessary, the Court grants Plaintiff's Motion based on the above analysis of the *Foman* factors.

### III. CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** as follows:

(1) Plaintiff's Motion for Leave to File an Amended Complaint (DE 24) is **GRANTED**;

(2) The Clerk of Court **SHALL FILE** the tendered Amended Complaint in the record.

Dated July 26, 2019.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY