UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| BETTY CASEY, Administrator of the Estate of John Alexander Casey, Deceased,<br><br>Plaintiff,<br><br>V.<br><br>JONATHAN ROUSE,<br><br>Defendant. | CIVIL NO. 7:17-145-KKC-EBA<br><br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant's motion for summary judgment. Plaintiff Betty Casey, as administrator of the Estate of John Alexander Casey, originally brought suit against several defendants, including Jonathan Rouse. (DE 1.) Following the Court's ruling on Defendants' motions to dismiss, the case proceeded to discovery on some of Plaintiff's claims against Defendant Rouse. (DE 11.) Defendant filed his motion for summary judgment regarding these remaining claims. (DE 40.) For the reasons stated below, the Court denies Defendant's motion.

## Background

**I. Factual Background**

On July 31, 2016, Kentucky State Police Troopers Jonathan Rouse and Curt Rowe responded to a remote part of Pike County, Kentucky to investigate a report that two individuals, John Casey and Lacy Wolford, had broken into a residence and assaulted a third individual, Adam Layne. (DE 40-1 at 2.) The officers believed Mr. Casey to have had a

1

"fraught relationship" with law enforcement, and that he might be dangerous. (DE 40-1 at 2.) After initially speaking with Mr. Casey and Mr. Wolford, the troopers learned from police dispatch that there was an active warrant out for the arrest of Mr. Casey. (DE 40-1 at 3.) At some point soon after, Mr. Wolford fled from the officers, who initially gave chase. (DE 40-1 at 3.) As the officers pursued Mr. Wolford, Mr. Casey fled as well. (DE 40-1 at 3.)

Mr. Casey eventually returned to his trailer, but escaped as Defendant pursued him. (DE 40-1 at 3.) Defendant shortly thereafter returned to his car, which was parked near the bottom of the hill below Mr. Casey's trailer – from that location, he could see Mr. Casey standing at the top of the hill. (DE 40-1 at 3.) "Mr. Casey began threatening to fight or kill Trooper Rouse and refused to obey commands." (DE 40-1 at 3.) Defendant claims that Mr. Casey picked up and threw a rock at him, which struck Defendant, and that he "had to duck to avoid being struck by a second, softball sized rock." (DE 40-1 at 4.) Defendant fired a single gunshot at Mr. Casey, killing him. (DE 40-1 at 4.) Defendant claims that he did not fire his weapon "until he saw Mr. Casey reach in his pocket and saw a silver flash." (DE 40-1 at 4.) Defendant was standing approximately 25 to 30 yards away from Mr. Casey at the moment he discharged his weapon. (DE 41-2 at 38.)

## II. Procedural Background

On September 7, 2017, Plaintiff, Mr. Casey's mother, brought suit in this Court on behalf of Mr. Casey's estate. (DE 1.) The complaint named as defendants Troopers Rouse and Rowe; Richard W. Sanders, Commissioner of the Kentucky State Police; William Alexander Payne, Deputy Commissioner of the Kentucky State Police; and Darren Stapleton, Commander of Post 9 of the Kentucky State Police. (DE 1.) On October 4, 2017, Troopers Rouse and Rowe filed a joint motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) (DE 5); the other three defendants filed a separate joint motion to dismiss on the same day (DE 6). The Court ruled on both motions on June 21, 2018. *Casey v. Sanders*, No. 7:17-CV-145-KKC,

2018 WL 3078758 (E.D. Ky. June 21, 2018). Pursuant to that order, Plaintiff's claims against Defendants Rowe, Sanders, Payne, and Stapleton were dismissed, as were her claims against Defendant Rouse for having violated Mr. Casey's Fourteenth Amendment rights, the Americans with Disabilities Act, and for having committed negligence and gross negligence against Mr. Casey. *Id.* Following the motions to dismiss, the Court granted Plaintiff's motion to amend her complaint, noting that, even though the motion was unnecessary and untimely, it did not prejudice Defendant Rouse. (DE 33.) As a result of these orders, the remaining claims in this case are for violations of Mr. Casey's Fourth Amendment rights, battery, and wrongful death, all against Defendant Rouse. On August 9, 2019, Defendant filed the motion for summary judgment. (DE 40.)

## Analysis

### I. Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden and must identify "those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citation and internal quotation marks omitted). All evidence, facts, and inferences must be viewed in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "In order to defeat a summary judgment motion… [t]he nonmoving party must provide more than a scintilla of evidence," or, in other words, "sufficient evidence to permit a reasonable jury to find in that party's favor." *Van Gorder v. Grand Trunk W. R.R., Inc.*, 509 F.3d 265, 268 (6th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Summary judgment must be entered if, "after adequate opportunity for discovery," a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citation to *Celotex*, 477 U.S. at 322 and internal quotation marks omitted).

**II. 42 U.S.C. § 1983 Claims**

Plaintiff's remaining claim under federal law is for a violation of Mr. Casey's Fourth Amendment rights, brought pursuant to 42 U.S.C. § 1983. (DE 34 at 4.) That statute provides "a vehicle for a plaintiff to obtain damages for violations of the Constitution or a federal statute." *Boler v. Earley*, 865 F.3d 391, 401 (6th Cir. 2017). Under the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

42 U.S.C. § 1983. However, the law provides government officials with qualified immunity from § 1983 claims. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "If the law at the time [of the conduct] did not clearly establish that the [official's] conduct would violate the Constitution, the [official] should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The Supreme Court has further clarified that "conduct violates clearly established law" if, at the time of the conduct, the "contours" of the right were "sufficiently clear" such that "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations, internal quotation marks, and brackets omitted). Qualified immunity will apply "if reasonable officials

4

could disagree as to whether the conduct violated the plaintiff's rights." *Thomas v. Cohen*, 304 F.3d 563, 580 (6th Cir. 2002). The law does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. In other words, the conduct at issue need not have "previously been held unlawful," but "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"Defendants bear the initial burden of coming forward with facts to suggest that they were acting within the scope of their discretionary authority during the incident in question." *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1095 (6th Cir. 1992). However, a plaintiff has the burden of proving that a defendant is not entitled to qualified immunity and must show that the right at issue is clearly established. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). "[T]he plaintiff must effectively pass two hurdles when facing a defendant on summary judgment who claims qualified immunity. First, the allegations must state a claim of violation of clearly established law. Second, the plaintiff must present evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1043 (6th Cir. 1992) (citations and internal quotation marks omitted).

Plaintiff alleges that Defendant's conduct constituted "unreasonable, excessive force" and a violation of the Fourth Amendment. (DE 34 at 4.) "Because it is axiomatic that individuals have a clearly established right not to be shot absent probable cause to believe that they pose a threat of serious physical harm, [the Court] must determine whether [Defendant's] use of deadly force was unreasonable under the Fourth Amendment." *Woodcock v. City of Bowling Green*, 679 F. App'x 419, 423 (6th Cir. 2017) (citation to *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) and internal quotation marks omitted). "The Fourth

5

Amendment… only permits an officer to use reasonable force to protect himself from a reasonable threat." *Aldini v. Johnson*, 609 F.3d 858, 867 (6th Cir. 2010). "Claims of excessive force are analyzed under an objective-reasonableness standard, which depends on the facts and circumstance of each case viewed from the perspective of a reasonable officer on the scene." *Miller v. Sanilac Cty.*, 606 F.3d 240, 251 (6th Cir. 2010). "Fourth Amendment excessive-force inquiries require a careful balancing of the force used against the countervailing governmental interests at stake." *Lawler v. City of Taylor*, 268 F. App'x 384, 387 (6th Cir. 2008) (citation and internal quotation marks omitted). The Court must consider the totality of the circumstances, with special attention given to "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). "These factors help inform our ultimate inquiry, which must always be whether the totality of the circumstances justified the use of force." *Mullins*, 805 F.3d at 765 (citation and internal quotation marks omitted).

On balance, the Court finds that there are genuine disputes as to material facts and that Defendant is not entitled to judgment as a matter of law on the question of whether he violated Mr. Casey's clearly established Fourth Amendment rights. The issue, as the Court suggested in its June 21, 2018 Opinion and Order, largely turns on Mr. Casey's "behavior immediately prior to the moment he was shot," and whether Mr. Casey "posed an immediate threat to Rouse's safety." *Casey*, 2018 WL 3078758, at *4 (citation to *Mullins*, 805 F.3d at 766 and internal quotation marks omitted). Although it appears undisputed that Mr. Casey fled from the officers, threw a rock at Defendant, and had been generally unwilling to comply with the officers' commands (DE 40-1 at 9-10, 13), the extent to which Defendant argues that this alone means that his use of lethal force against Mr. Casey did not violate the decedent's

6

clearly established Fourth Amendment rights (DE 43 at 4), the Court disagrees. The parties dispute whether Defendant was struck by the rock[1] or whether Mr. Casey either attempted to, or did, throw a second rock at Defendant.[2] The record is also unclear as to whether Defendant could have taken cover.[3] Another critical fact in dispute is whether, in the moments before he was shot, Mr. Casey reached for an object in his pocket that could have reasonably been perceived to be a gun or other dangerous instrument.[4] Because of the factual disputes, the Court finds that the question of whether Defendant violated Mr. Casey's clearly-established Fourth Amendment rights – which hinges on whether Defendant's use of force was objectively reasonable – is inappropriate for summary judgment.

**III. State Law Claims**

Plaintiff's remaining claims under Kentucky state law are for battery and wrongful death. (DE 34 at 4.) However, Kentucky state law provides government officials with qualified immunity when sued in their individual capacities – "protection from damages liability for good faith judgment calls made in a legally uncertain environment." *Yanero v.*

---

[1] Defendant testified during his deposition that an "object," which he "believe[d] to be a rock, struck [him] on the left side of [his] head." (DE 40-2 at 12.) Plaintiff, however, claims that "[t]here is no evidence Defendant was ever struck by a rock" and that "photographs of Defendant taken at the scene soon after the incident show no evidence of any injury." (DE 42 at 3.)

[2] Defendant testified during his deposition that saw Mr. Casey holding a second, "softball sized rock," which he threw at him, but that Defendant "was able to duck under that rock." (DE 40-2 at 12-13.) An eyewitness to the incident, however, testified that Mr. Casey only every had one rock. (DE 41-1 at 53-54.)

[3] Defendant testified during his deposition that "[t]here was no cover whatsoever… no cover concealment whatsoever that I could have used." (DE 40-2 at 16.) Plaintiff counters that "there were abandoned vehicles and heavy vegetation in the area where Defendant was standing that could have afforded him protective cover from a rock thrown by Mr. Casey." (DE 42 at 3.) Further, Defendant testified during his deposition that at the time of the incident, "it was very green… vegetation-wise… there was a lot of weeds and grass and bushes. Everything had bloomed." (DE 41-2 at 54.)

[4] Defendant testified during his deposition that Mr. Casey "turned his right side, kind of bladed away in a shooter stance. He reached in his pocket and what I believed to be a handgun was coming out. I saw something silver coming out of his pocket… At that time, I believe[d] that he was drawing a – drawing a handgun on me." (DE 40-2 at 13.) An eyewitness to the incident, however, testified that Mr. Casey did not have anything in his pockets – that, in fact, "his shorts didn't even have pockets" – and that his hand was not near his pocket area at the moment he was shot. (DE 41-1 at 51-52, 62.) Further, no weapon was ever found on or near Mr. Casey. (DE 34 at 3.)

*Davis*, 65 S.W.3d 510, 522 (Ky. 2001). "Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Id.* (citations omitted). Upon review of the parties' briefs, only the second element appears to be in question.[5] As the *Yanero* court explained:

> [I]n the context of qualified official immunity, "bad faith"[6] can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive. Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith.

*Id.* at 523 (citations omitted).

Defendant argues that "Plaintiff is unable to establish that the shooting was performed in bad faith." (DE 40-1 at 16.) However, and as Plaintiff highlights (DE 42 at 8), the analysis here should track the prior discussion of whether Defendant violated Mr. Casey's clearly established Fourth Amendment rights. *See Woodcock*, 679 F. App'x at 425. Just as the Court rejects, at this stage, Defendant's claim for qualified immunity under federal law, it makes the same finding as to qualified immunity under Kentucky state law.

---

[5] In its June 21, 2018 Opinion and Order, the Court found that "Trooper Rouse was engaged in a discretionary act within the scope of his authority [when he] used force against John Casey." *Casey*, 2018 WL 3078758, at *8. Nothing in the record as it has been developed since then compels a different conclusion now.

[6] The Court presumes that "bad faith" in this context is equivalent to a "lack of good faith." *See Turner v. Hill*, No. 5:12-CV-00195-TBR, 2014 WL 549462, at *9 (W.D. Ky. Feb. 11, 2014) (relying on that presumption).

## **Conclusion**

Accordingly, the Court hereby ORDERS that Defendant's motion for summary judgment (DE 40) is DENIED.

Dated March 13, 2020

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY